UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

|  |  |
|---|---|
| BERNARD MITCHELL, | |
| Plaintiff, | Civil Action No. 3:13–CV–312 |
| v. | |
| AMER SAJED, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants' Motion to Compel Arbitration and Stay Proceedings, or in the Alternative, Motion for a More Definite Statement, or in the Other Alternative, Motion to Dismiss ("Initial Motion to Compel") (ECF No. 4), and Defendants' Renewed Motion to Compel Arbitration and Stay Proceedings, or in the Alternative, Motion to Dismiss Plaintiff's Amended Complaint ("Renewed Motion to Compel") (ECF No. 16).[1] This federal question case arises out of a Juniper Bank Platinum MasterCard (the "Credit Card") issued to *pro se* Plaintiff Bernard Mitchell by Barclays Bank Delaware ("Barclays"). Plaintiff filed suit against Amer Sajed, CEO of Barclays, and Barclays (collectively "Defendants"), alleging violations of the Fair Credit Reporting Act ("FCRA"), the Fair Debt Collection Practices Act ("FDCPA"), and the Fair and Accurate Credit Transactions Act ("FACTA"). Defendants collectively move the Court to compel arbitration, pursuant to the arbitration clause in the cardmember agreement, or in the alternative dismiss Plaintiff's Amended Complaint. On July 19, 2013, the Court held a hearing on Defendants' Motions. For the reasons stated below, GRANTS IN PART Defendants' Renewed Motion to Compel Arbitration and DISMISSES WITHOUT PREJUDICE Plaintiff's Complaint.

---

[1] The Renewed Motion to Compel incorporated the Initial Motion to Compel. The Court therefore DENIES AS MOOT the Initial Motion to Compel.

## BACKGROUND

In September of 2006, Plaintiff obtained a credit card from Juniper Bank, which is owned by Barclays PLC. Amended Compl. ¶ 1, ECF No. 9 [hereinafter Compl.].[2] Barclays submitted the Cardmember Agreement ("2006 Agreement") that was in place at the time Plaintiff was issued the Credit Card. Initial Motion to Compel, Ex. A, Roark Aff. ¶ 4, May 23, 2013, ECF No. 4-1 [hereinafter Roark Aff.]. Barclays asserts that, as part of its customary business practices, an employee of Barclays made a note that Barclays mailed Plaintiff his Credit Card and the 2006 Agreement on or about October 1, 2006. Roark Aff. ¶¶ 5-6. The 2006 Agreement states, "By signing, keeping or using your Card or Account, you agree to the terms and conditions of this Agreement." Roark Aff. Ex. 1, at 1, ECF No. 4-2 [hereinafter 2006 Agreement]. The 2006 Agreement also includes an arbitration clause, stating:

> Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account including (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and Claims regarding the applicability of this arbitration clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration under the rules and procedures of the arbitration Administrator selected at the time the Claim is filed. The Administrator selection process is set forth below. For purposes of this provision, "you" includes any authorized user on the Account, agents, beneficiaries or assigns of you; and "we" or "us" includes our employees, parents, subsidiaries, affiliates, beneficiaries, agents and assigns. Claims made and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual basis, not on a class representative basis.

> As an exception to arbitration you and we may pursue a Claim within the jurisdiction of the Justice of the Peace Court in Delaware, or the equivalent court in your home jurisdiction (each a "Small Claims Court"), provided that the action remains in that court, is made on behalf of you and/or your authorized user only and is not made part of a class action, private attorney general action or other representative or collective action. Further, you and we agree not to seek to enforce this arbitration provision, or otherwise commence arbitration based on

---

[2] In response to the Defendants' Initial Motion to Compel, Plaintiff filed a document entitled "Plaintiff's Complaints, and Response & Objections to Defendant's [Initial Motion to Compel]" (ECF No. 9). A portion of the document responds to the Defendants' arbitration clause arguments; however, a majority of the document contains what appears to be an amended complaint in response to the Defendants' alternative arguments moving for a more definite statement or to dismiss. The Defendants construe this document as an amended complaint and the Court does the same.

the same claims in any action brought before the Small Claims Court.
2006 Agreement 4.

Plaintiff used the Credit Card and paid as required until October 2007, when the account became delinquent. Compl. ¶ 1. After extended negotiations between the parties, Barclays closed Plaintiff's account in October of 2007 and charged off the account in January of 2008 in the amount of $922. Compl. ¶ 1. Barclays continued to attempt to collect the amount of the charge off, directly seeking reimbursement and by using a third party collection company called West Asset Management. Compl. ¶¶ 2-5. The parties eventually settled the charge off at an amount of $461.32. Compl. ¶¶ 2-5. As a result of the settlement, Barclays was to provide an update to the three major credit reporting agencies that the account was "settled and closed." Compl. ¶ 5. Plaintiff made payment according to the settlement and, on December 15, 2009, received a letter that stated, "per our settlement agreement, this account is now closed, and that Plaintiff had no further obligation to Barclays." Compl. ¶ 5. In September of 2012, Plaintiff obtained his annual credit reports from all three credit reporting agencies and learned that Barclays did not report a "date closed" status. Compl. ¶ 6. Plaintiff also logged onto his Juniper/Barclays online credit card account on March 4, 2013 to find that the online account stated the current balance due was $461.31. Compl. ¶ 7. Plaintiff then sent dispute letters to Barclays and attempted to resolve the issues on his credit reports. Compl. ¶¶ 8-15.

After being unable to resolve the dispute, Plaintiff filed this suit on April 12, 2013 in the Dinwiddie County General District Court. Defendants then properly removed the case to this Court on May 16, 2013.[3] Defendants now move to compel arbitration of this dispute, pursuant to

---

[3] On May 30, 2013, the Court received a copy of a filing Plaintiff made in the Dinwiddie General District Court, entitled "Response to 'Notice of Removal' for Warrant in Debt" (ECF No. 8). This notice apparently challenged the Defendants' removal of the case with the Dinwiddie General District Court, but reserved Plaintiff's right to challenge removal by filing a motion to remand in this court pursuant to 28 U.S.C. § 1447(c). Defendants' responded, arguing removal was proper (ECF No. 14). Plaintiff replied to Defendants' response and stated he "respectfully acknowledges now that the Federal Courts have subject matter jurisdiction over Plaintiff's claims, and so Plaintiff accepts this fact." Accordingly, any challenges Plaintiff raised to removal are moot.

the arbitration clause in the 2006 Agreement, or in the alternative move to dismiss the amended complaint for failure to state a claim.

## DISCUSSION

a. *Legal Standard*

The Federal Arbitration Act ("FAA") provides that a written arbitration "provision in. . . a contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision is "a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Section 4 of the FAA "provides a remedy for a party seeking to compel compliance with an arbitration agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403 (1967). Pursuant to section 4, "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4.

Under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25. A narrow exception to the general favor shown to arbitration agreements provides that "[t]he question whether the parties have submitted a particular dispute to arbitration, i.e., the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provided otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002). Questions of arbitrability, however, are limited to:

> the kind of narrow circumstances where contracting parties would likely have expected a court to have decided the gateway matter, where they are not likely to have thought that they had agreed that an arbiter would do so, and, consequently, where reference of the gateway dispute to the courts avoids the risk of forcing parties to arbitrate a matter that they may well not have agreed to arbitrate.

*Id.* at 83-84; *Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP*, 645 F.3d 267, 273 (4th Cir.

2011). Prior to compelling arbitration, therefore, a court must conclude "the parties have agreed to arbitrate their disputes and the scope of the parties' agreement permits resolution of the issue." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013). "Whether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms & Associates, Inc.*, 634 F.3d 260, 266 (4th Cir. 2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 91 (4th Cir. 1996)).

      b. *Analysis*

      The Court finds the arbitration clause in this case was entered into by the parties and encompasses the claims raised by Plaintiff. An initial question, however, that must be considered is which of the three submitted arbitration clauses apply to this case—the 2006 Agreement Barclays asserts it sent along with the Credit Card to Plaintiff on October 1, 2006, the cardmember agreement Plaintiff asserts he obtained from the Barclays website sometime in 2013 ("2013 Barclays Agreement"), or the Juniper Bank Delaware Online Arbitration Clause Plaintiff obtained on the Juniper Bank website sometime in 2013 ("Juniper Arbitration Clause"). The Court finds the 2006 Agreement applies to Plaintiff's dispute because it was sent by Barclays along with the Credit Card. *See* Roark Aff. ¶ 4. The later obtained agreements could not apply to Plaintiff's account because his account was closed in 2008 and the agreements he submitted are those in effect in 2013. Further, the 2013 Barclays Cardmember Agreement applies to credit cards issued with Farm Bureau Bank, not Juniper Bank. Accordingly, the 2006 Agreement applies to this action.

      A review of the Complaint and the 2006 Agreement reveals Plaintiff entered into the 2006 Agreement, including the arbitration clause. Barclays sent the 2006 Agreement along with the Credit Card upon approval of Plaintiff's application for the Credit Card. The 2006 Agreement states: "By signing, keeping or using your Card or Account, you agree to the terms and conditions of this Agreement." 2006 Agreement 1. The agreement included the arbitration

clause Defendants now seek to enforce. Plaintiff admits in his Complaint that he received the Credit Card in 2006, used it, and paid the debts on the Credit Card until October of 2007. Plaintiff thereby accepted the terms of the 2006 Agreement, including the arbitration clause. Acceptance of the agreement by use of the Credit Card, rather than by signing the agreement, is valid under the law. The FAA does not require an arbitration agreement be signed by the parties entering into the agreement. *See* 9 U.S.C. § 2; *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007); *Caley v. Gulfstream Areospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005). Additionally, whether applying Delaware law, as provided in the 2006 Agreement, or Virginia law, Barclays as offeror of the contract for the Credit Card was able to dictate that Plaintiff accepted the offered terms of the 2006 Agreement by use of the Credit Card. *See Grasso v. First USA Bank*, 713 A.2d 304, 308-09 (Del Super. Ct. 1998); *RES Constr. Co., Inc. v. R.D.G. Builders*, No. 98846, 1992 WL 884588, at *2 (Mar. 19, 1992 Va. Cir. Ct.) (citing *Va. Hardwood Lumber Co. v. Hughes*, 140 Va. 249, 257 (1924)). It is therefore clear that when Plaintiff received the 2006 Agreement and used the Credit Card, he agreed to the terms of the arbitration clause.

The disputes raised by Plaintiff fall within the scope of the arbitration clause agreed to by the parties. Plaintiff's complaint alleges violations of the FCRA, 15 U.S.C. § 1681 *et seq.*, the FDCPA, 15 U.S.C. § 1692, *et seq.*, and the FACTA, Pub. L. No. 108-159, 117 Stat. 1952 (Dec. 4, 2003).[4] Compl. ¶ 16. His allegations arise from the closing, charging off, collection, and credit reporting of his Credit Card account with Barclays. *See generally,* Compl. The arbitration clause in the 2006 Agreement provides:

> Any claim, dispute or controversy ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or your Account, or any transaction on your Account indicating (without limitation) Claims based on contract, tort (including intentional torts), fraud, agency, negligence, statutory or regulatory provisions or any other source of law and Claims regarding the applicability of this arbitration

---

[4] This Court has previously noted that the FACTA merely amends the FCRA. *Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741, 745 (E.D. Va. 2006).

6

clause or the validity of the entire Agreement, shall be resolved exclusively and finally by binding arbitration.

2006 Agreement 4.

Plaintiff's claims are all "arising from or relating in [some] way to . . . [Plaintiff's] Account" with Barclays and are based on "statutory or regulatory provisions." *Id.* Accordingly, under the plain language of the arbitration clause, Plaintiff's claims "shall be resolved exclusively and finally by binding arbitration." *Id.* Plaintiff's argument that his claims do not fall within the scope of the arbitration clause because it does not explicitly reference the FCRA, FDCPA, or FACTA is unpersuasive because the arbitration clause is broadly written to include "any claim, dispute or controversy" arising in relation to the Credit Card account. Plaintiff's statutory claims all arise from Barclays' handling of his Credit Card account and therefore fall within the scope of the arbitration agreement.

The Court further does not find the terms of the arbitration agreement unconscionable. Finding that Plaintiff entered into an arbitration agreement covering the claims raised in the Complaint, the Court will compel arbitration of Plaintiff's claims. Upon compelling arbitration, the Court further exercises its discretion to DISMISS this action without prejudice on the basis of improper venue. *See Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 n.9 (4th Cir. 2012) (recognizing the characterization of "an arbitration clause as 'a specialized kind of forum-selection clause'" and explaining that "a motion to dismiss based on a forum-selection clause should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue.") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974); *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006)). Dismissal of this action renders Defendants' alternative motion to dismiss for failure to state a claim moot and the Court need not address Defendants' arguments.

## CONCLUSION

For the reasons stated above, the Court DENIES AS MOOT the Initial Motion to Compel and GRANTS IN PART the Renewed Motion to Compel. Plaintiff's Complaint is therefore DISMISSED WITHOUT PREJUDICE.

Let the Clerk send a copy of this Memorandum Opinion to Plaintiff and all counsel of record.

An appropriate order shall issue.

/s/
James R. Spencer
United States District Judge

ENTERED this 22nd day of July 2013.

8